THE STATE, FANNIE P. CHEYNEY, PROSECUTRIX, v. ATLANTIC CITY WATER WORKS COMPANY.

Under the act (*Rev. Sup., p.* 650), a water company can condemn a strip of land for the purpose of excavating an open conduit to convey water from a pond to its pumping station.

---

On *certiorari.*

This *certiorari* brings up an order made for the appointment of commissioners to condemn a strip of land in Atlantic county. The petition sets out that the petitioners are a corporation organized under "An act for the construction, maintenance and operation of water works," &c., for the purpose of supplying Atlantic City with water; that the company requires for the purpose of its incorporation, and for the excavation, construction and maintenance of a conduit, the land described in said petition, being one hundred feet in width; that said land is to be used and occupied for the purpose of excavating, constructing and maintaining an open conduit for the conveyance of water from its source of supply at Doughty's pond to its pumping station in Pleasantville; that said conduit is to be an open one, about twenty feet in width on the surface and about five feet in depth, and sloping to a width

of about five feet at the bottom, and to be fenced on either side its full length; that the use of said conduit and the conveyance of said water is requisite and necessary to amply and properly supply Atlantic City with water, and to effect the purposes of its incorporation; that the route of said conduit is the most direct and only feasible route and conduit for water as aforesaid.

Argued at November Term, 1892, before Justices Depue and Reed.

For the prosecutrix, *David J. Pancoast.*

For the defendant, *Joseph Thompson.*

The opinion of the court was delivered by

Reed, J.   The single point made against the order in this case is, that there is no power conferred upon this company to condemn this strip of land for the excavation of an open canal.

The act under which the company is incorporated is found in *Rev. Sup., p.* 650. The act confers upon the company the right to "take and divert any and all such springs and streams of water, and to build, erect, alter and repair reservoirs and works, and lay down all such pipes and conduits for water at such times and in such places as shall be necessary and proper to enable said corporation to carry into effect the purposes of its incorporation." It provides that "in case the said company cannot agree with the owner interested in any lands which said company may desire to take, use and occupy, or from which they may desire to take or divert streams of water for the purposes of its incorporation, as to the amount of compensation, commissioners may be appointed to condemn."

The contention on the part of the prosecutrix is, that the order made in this case must stand—if it can stand at all— upon the power to lay down pipes and conduits; and it is contended that the purpose of the present proceedings is to

take land for a different purpose, namely, to excavate an open canal.

That this canal is a conduit cannot be denied; for a conduit is defined to be either a channel or a pipe; and a channel may be either an enclosed or an unenclosed conductor of water. It is true that the words " lay down a conduit or pipe " seem to imply that in the minds of the legislature was the thought that the water would be conducted by some open or enclosed conduit laid down upon or beneath the surface of the ground; but a canal cut in the earth and laid down in cement would fill the exact statutory description.   I think that no distinction between a canal to be artificially constructed, having its walls and banks made of iron, tile, wood or cement, and a canal, the bed and walls of which are formed from the natural soil, was in the legislative mind.

The grant intended was of a power to condemn land required to execute the purposes of the incorporation, which was to build water works and convey water from its source to the points of distribution.   The power to construct conduits seems to be an incident of the power to divert streams and springs and to build reservoirs and works; for without the power to construct channels through which water may be diverted, the power to divert and erect works would be useless.   The additional mention of the privilege of laying down conduits and pipes was not intended as a restriction upon the general power, nor should it be so considered unless this intention was clearly apparent.   Indeed, from the general power to divert springs and streams, and to maintain works alone, the right to exercise the present claim to the land in question, for the purpose of building a sluiceway to conduct the water from its source to the pumping station of the company, would naturally spring.

Of course, in conducting water across highways, the company is bound to go beneath the surface, according to the requirements of section 12 of the act.   But it may be observed, that the first portion of this section would be entirely superfluous legislation if the only power given by the previous sec-

·tion was to conduct water by subterranean conduits, as claimed by the prosecutrix.

Conceding, as I do, the well understood rule that a grant ·of the power to take land *in invitum* must clearly appear, yet I conclude that the power does exist under the statute to ac·quire land for the construction of a conduit of the kind in question. As already remarked, the only objection taken ·upon the argument is rested entirely upon the point already mentioned.

There is another aspect of the case which occasioned, at ·first, some doubt. This arises from the width of the strip of land sought to be condemned. It is entirely settled that only ·property which is necessary for the undertaking can be appropriated for public use, under the power of eminent domain. Whether a strip of the width of one hundred feet was essen·tial for the purpose for which the land is intended to be used, suggests a question. But the petition states that the company requires this amount for their purpose. No testimony was ·taken to show the topography of the country which the canal ·traverses, or the necessity of land for banks, for construction ·and repairs, and for easy access to all its parts for all these ·purposes. We cannot say, upon the bare facts stated in the ·petition, that the statement that these lands were required is ·not true.

The *certiorari* is dismissed.